UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:15-CR-135-01 |
| Plaintiff, | Hon. Robert J. Jonker |
| v. | Chief United States District Judge |
| TYRONE SMITH, | **DEFENDANT TYRONE SMITH'S SENTENCING MEMORANDUM AND REQUEST FOR VARIANCE** |
| Defendant. | |

## INTRODUCTION

Tyrone Smith comes before this Court for Sentencing on May 11, 2016, having pled guilty to two counts of Sex Trafficking by Force, Threats of Force, Fraud, or Coercion in violation of 18 USC §§ 1591(a)(1), (b)(1), and (e) and one count of Transportation for the Purpose of Prostitution, 18 USC § 2421 as part of a binding plea agreement. There remains one outstanding objection to the Presentence Investigation Report ("PSR"). Mr. Smith submits this Memorandum to give this Court a clearer understanding of him as an individual and to request a variance from the advisory guideline range for the reasons explained herein.

## SENTENCING CONSIDERATIONS

### I.  Standard of review

As this Court well knows, 18 U.S.C. § 3553(a) governs sentencing in federal court. The statute requires district courts to impose a sentence "sufficient, but not greater than necessary," to comply with the purposes of sentencing set forth in § 3553(a)(2). Pursuant to *United States v. Booker*, 125 S. Ct. 738 (2005), the guideline system created by the Sentencing Reform Act of

1984 is deemed to be merely advisory and but one of many factors to be considered in determining an appropriate sentence.

## II.     The history and characteristics of the Defendant

### A.     Mr. Smith's family and education.

Mr. Smith is not seeking sympathy from this Court, but hopes that this Court will acknowledge that he understands the gravity of his actions and that he has taken steps to ensure that he will never repeat his mistakes. We believe that, in order for this Court to truly understand the defendant being sentenced, it is necessary to outline how Mr. Smith got to the place where he finds himself today.

Mr. Smith's early life was troubled. Mr. Smith was born in Chicago, Illinois, on August 20, 1969, to mother, Catherine Powell. (*See* PSR ¶ 136.) He grew up with two maternal half-brothers, Corey and Anthony Powell. Tragically, his half-brother Anthony Powell died as the result of gang violence in 1990. (PSR ¶ 137.) Catherine Powell tried hard to be a good mother during those early years, but she suffered from a serious drug addiction and abandoned Mr. Smith and his brothers when they were children. (PSR ¶ 138.) Mr. Smith has never known the identity of his biological father. (PSR ¶ 136.) After being abandoned by their mother, Mr. Smith and his brothers were cared for at times by his maternal grandmother, Georgia Smith, and his maternal aunt, Diane Moore. (PSR ¶ 138.) They too attempted to play a positive role in Mr. Smith's upbringing, but ultimately, Mr. Smith had a self-described "bad" childhood and has few good memories from this period of his life. (PSR ¶ 138.)

By age 12, Mr. Smith was experimenting with drugs and alcohol. (PSR ¶ 151-52.) At age 16, Mr. Smith left school to obtain a job in order to support himself and his brothers. (PSR ¶ 138.) Around the same time, perhaps in search of a sense of belonging and companionship that

was lacking in this family life, Mr. Smith joined a gang, the Gangster Disciples. (PSR ¶ 143.) However, Mr. Smith left the Gangster Disciples when he moved to Michigan in 1990. (PSR ¶ 143.)

At the age of 26, Mr. Smith was sentenced to 12 years in prison. (PSR ¶ 118.) Mr. Smith used his time in custody to take advantage of all opportunities to better himself, obtaining his GED and attending college courses while in the custody of both the Michigan and the Illinois Departments of Corrections. (PSR ¶ 154-55.) He also sought skills to help transition back into society. Mr. Smith obtained a Food and Sanitation license in the state of Illinois and a Custodial Maintenance license in the state of Michigan. (PSR ¶ 155.) These licenses have since expired, however Mr. Smith hopes to take advantage of vocational training and licensing programs available through the Bureau of Prisons. (*Id.*)

Though Mr. Smith has undoubtedly made missteps throughout his life, some incredibly serious, there were bright spots during this time. Before being sentenced to prison, Mr. Smith had a long history of gainful employment, showcasing his strong work ethic and dedication to providing for his family. (PSR ¶ 156-62.) This dedication allowed him to purchase his first home when he was only 21 years old. Additionally, Mr. Smith spent over ten years in a loving and committed relationship with girlfriend, Dorothy Lockridge, during which the couple gave birth to daughter Tyisha Lockridge. (PSR ¶ 142.) Now, Mr. Smith is also the proud grandfather of a two-year old grandson whom he loves very much.

Mr. Smith feels a deep sense of responsibility for those he loves. Growing up, he did his best to provide support for his brothers, taking jobs as a cashier and line cook. (*See* PSR ¶ 160-162.) His half-brother Corey writes that:

> Tyrone is a loving, caring, and humble individual who [has] a beautiful . . .

> daughter and two year-old grandson. Tyrone is also the lead caretaker of his 93 year old grandmother. . . . A host of friends and family depend on Tyrone for his loving support.

(**Exhibit A,** Letter from Corey Powell (minor grammatical modifications made).) His aunt Diane, who helped raise him as a child, states that Mr. Smith, "mean[s] a lot to me and the family" and that "he play[s] a big part in our lives." (**Exhibit B**, Letter from Diane Moore.) She, and the rest of Mr. Smith's family, vow to provide support and be a positive influence on Mr. Smith upon his release. (*Id.*; *See also* **Exhibit C**, Letter from Capucine Hampton.)

Mr. Smith knows from experience how hard it is to grow up without a father figure, and has attempted to provide that role for his younger cousins. (*See* **Exhibit D**, Letter from Kayla Lambert.) Even when Mr. Smith proved unable to make the correct choices in his own life, he was always there for his family to push them in a positive direction and encourage them to do better. His cousin Andre Smith states:

> Tyrone encouraged and pushed us to do good in school and stay out of trouble, even in his incarcerations. Tyrone reached out to all of us, he was always the type of person to extend love and concern for his family . . . if it weren't for him, I wouldn't be in school right now . . . . I continue Tyrone's legacy in seeing to it that my younger siblings and cousins are moving forward with their education and staying out of the system. I and all of my cousins owe a great deal of credit to Tyrone . . . . He is greatly loved and greatly needed.

(**Exhibit E**, Letter from Andre Smith (minor grammatical modifications made).) Those who know Mr. Smith know he has the potential to turn his life around and lead a positive and productive life. (*See* **Exhibit F**, Letter from Doris Williams.) Mr. Smith is ready and able to turn his life around. Once he has finished serving the sentence imposed by this Court, he plans to capitalize on the strengths he has demonstrated with his own family and begin a nonprofit program aimed at helping at-risk youths avoid the pitfalls he himself has fallen into.

4

### B. Mr. Smith is committed to substance abuse treatment.

Mr. Smith will take advantage of whatever Bureau of Prisons ("BOP") resources are available to learn more about the symptoms of drug addiction and to once and for all put an end to his use of illegal drugs. While Mr. Smith has already obtained a General Equivalency Degree ("GED"), he hopes that he will be able to participate in business, vocational, or other classes offered by the BOP. Mr. Smith understands that he must obtain lawful employment and remain "drug free" upon his release.

## III. The nature and circumstances of the offense

In this case, this Court is very well aware of the details of the offense, which will not be repeated herein. This memorandum will focus, instead, on issues unique to Tyrone Smith that we ask be taken into consideration in fashioning a sentence within the sentencing range of the plea agreement, which we believe will be sufficient, but not greater than necessary to comply with federal law.

### A. Remorse and responsibility.

Mr. Smith fully recognizes the illegality of his actions and the need to turn his life around. He has demonstrated regret and remorse for his involvement in the instant offense. (PSR ¶ 102.) Mr. Smith understands the pain his actions have caused for the victims of his offenses and feels deep regret for the harm he has inflicted. His actions went against his own moral beliefs and he feels sincere shame and regret for his behavior.

### B. Mr. Smith is committed to returning to his family and finding lawful work when his sentence is complete.

Mr. Smith has had an opportunity to reflect on his actions and is deeply ashamed of the decisions he has made. While he never set out to hurt anyone, he realizes the damaging toll his actions have inflicted on not only the victims but on his family and the community as a whole.

Mr. Smith is not a young man and even assuming this Court were to sentence Mr. Smith at the low-end of the sentencing range set forth in the plea agreement, Mr. Smith would be 61 years old upon his release.  He is a proud father, grandfather, and cousin and wants nothing more than to return to his family and provide the positive influence he knows he can be in their lives.  Mr. Smith intends to use his time in prison to write a book about his life and learn the steps necessary to create a nonprofit aimed at helping at-risk youths.  With access to vocational or rehabilitative programs, Mr. Smith has great potential to lead a law-abiding and transformative life after his sentencing, especially if this Court chooses to sentence Mr. Smith within the range specified in the plea agreement, as he requests.

## OBJECTIONS TO THE GUIDELINE CALCULATION

Mr. Smith objects to a two-point sentencing enhancement in the PSR.  Paragraph 86 adds a two-point enhancement under U.S.S.G. § 3A1.1(b)(1) if the defendant knew or should have known that a victim of the offense was a vulnerable victim.  The commentary to the guidelines define a "vulnerable victim" as one who is "unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct."  See U.S.S.G. § 3A1.1(b)(1) cmt. n. 2.

When an enhancement is contested, the Government bears the burden of establishing the enhancement applied by a preponderance of the evidence.  *United States v. Silverman*, 889 F.2d 1531, 1535 (6th Cir. 1989).

The sentencing guidelines state that the victim must be *unusually* vulnerable.  This has been interpreted by the courts to mean that the government must prove that the victim was "atypical of the usual targets of the relevant criminal conduct."  *United States v. Caballero,* 277 F.3d 1235, 1251 (10th Cir. 2002).  Here, the government must be able to show both that

6

characteristics of the victim make her particularly vulnerable to the crime of sex trafficking and distinguish her from the typical victims of this crime and that Mr. Smith knew or should have known of these characteristics when the crime was committed.  Courts have held that specifically in regards to Mann Act violations (transportation for the purpose of prostitution) "the unstable personal life" of the victim is "sufficiently common among Mann Act victims that [the victim's] runaway status cannot support the enhancement."  *United States v. Scott*, 529 F.3d 1290, 1302 (10th Cir. 2008).  In addition, neither the economic vulnerability of a Mann Act victim nor the victim's drug use status are unusual enough to warrant the vulnerable victim enhancement.  See *United States v Williams,* 291 F.3d 1180, 1195-96 (9th Cir. 2007), overruled on other grounds by *United States v. Gonzales*, 506 F.3d 940 (9th Cir. 2007).

While Mr. Smith does not seek to minimize the seriousness of his offense, there has been no showing in this case that the victim, K.H., has any characteristics that sufficiently differentiate her from other victims of this crime to apply the vulnerable victim enhancement.  While K.H. had not reached the age of majority when this crime took place, her age, runaway status, and earlier home life are characteristics shared by typical victims of sex trafficking.  Because the victim's other characteristics are common to the typical victim of this crime, Mr. Smith believes this enhancement to be inappropriate and objects to its application.

## REQUEST FOR VARIANCE

After *United States v Booker*, 543 U.S. 220 (2005), and its progeny, the Sentencing Guidelines are treated as merely advisory, and a district court is directed to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" of the Sentencing Reform Act.  18 U.S.C. § 3553(a).  The Act's purposes include reflecting the seriousness of the

offense, promoting respect for the law, and providing just punishment, deterrence, and protection to the public.  18 U.S.C. § 3553(a)(2).

As detailed above, a guideline range of life is greater than necessary to achieve the purposes of 18 U.S.C. § 3553(a). Mr. Smith acknowledges that the minimum under the sentencing agreement is 15 years.  A sentence below the advisory guideline range would still be adequate to deter this type of criminal conduct and communicate to Mr. Smith, and to the public, the seriousness of this offense.  Accordingly, Defendant Tyrone Smith respectfully requests that this Court sentence him to a period of incarceration within the 15 to 25 year range specified in the plea agreement.

## CONCLUSION

Tyrone Smith, respectfully requests that this Court decline to apply the vulnerable victim enhancement under U.S.S.G. § 3A1.1(b)(1).  The Government has not carried its burden to apply this enhancement.

Further, Mr. Smith respectfully requests that the Court grant his request for a variance and sentence him within the 15 to 25 year range of the plea agreement.  Accordingly, Mr. Smith requests that this Court impose a reasonable sentence that is sufficient, but not greater than necessary, to effect the purposes of sentencing.

Dated:  May 4, 2016  /s/  Madelaine C. Lane
Madelaine C. Lane
Brian P. Lennon
WARNER NORCROSS & JUDD LLP
900 Fifth Third Center
111 Lyon Street, N.W.
Grand Rapids, Michigan 49503-2487
616.752.2000
mlane@wnj.com
blennon@wnj.com
Attorney for Defendant Tyrone Smith

168709.168709 #14318910-1