UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                          Case No. 1:15-CR-135

TYRONE SMITH,                    HON. ROBERT J. JONKER
                                              United States Chief District Judge

        Defendant.
_____/

## GOVERNMENT'S SENTENCING & RESTITUTION MEMORANDUM

The government submits this sentencing memorandum in support of the Presentence Report (PSR), including the application of the contested guideline enhancement. (PageID.125-160.) The government also presents here the facts and circumstances that led to the parties' negotiated sentencing cap of 25 years in the plea agreement (PageID.50-51, ¶ 4) and requests that the Court order $20,000 in restitution to E.L. (PageID.139-140, ¶¶ 63-64; PageID.51, ¶ 5.)

### FACTUAL BACKGROUND

The majority of the facts are undisputed, including all of the following. Smith operated a prostitution business from at least December 2012 to June 2015, during which time he pimped, beat, threatened, and controlled multiple women. (PageID.52-53.) He ran a house of prostitution in Lansing (PageID.130, ¶ 18) and provided the multiple women he recruited with "a constant supply of cocaine base (crack cocaine) and heroin" (*id.*, ¶ 17). He conducted photo sessions with the girls and women when they first started and posted advertisements of them online as prostitutes under his "New Stars" brand of business. (PageID.130-137, ¶¶ 19, 23, 32,

38, 41, 54.) He recruited vulnerable girls and women – many of whom came from abusive relationships, unstable backgrounds, and addiction – who were easy to lure and control with drugs, food, a place to stay, and a combination of affection and violence. (PageID.131-137 ¶ 22, 32, 33, 38, 40, 50, 51.) Smith gave them cell phones and arranged commercial sex dates for them with paying customers, and he kept the roughly $1,500 a day they earned for him. (PageID.131, ¶ 23; PageID.137, ¶ 55.) He paid them in heroin, crack, food, a place to stay, and little extras like "hair and nail treatments." (PageID.131, ¶¶ 22-23; PageID.134, ¶ 37; PageID.135, ¶¶ 40-42; PageID.137-138, ¶ 55.) Smith pimped his "New Stars" out in Lansing, Ann Arbor, Detroit, and Grand Rapids, Michigan; as well as Chicago and Skokie, Illinois. (PageID.138, ¶ 56.)

Smith did not tolerate disloyalty. When one of the victims in this case left Smith and tried to make it on her own, she used the photographs Smith took of her and posted them online to attract her own paying customers. (PageID.134, ¶ 35.) Smith saw the photographs and responded to the ad, went to the house where she was staying, kicked at the door, broke the window, got inside, and dragged her by the hair from room to room. (*Id.*) He put her in the car, punched her in the face, and drove her back to his prostitution house in Lansing. (*Id.*) There, he made a minor who worked for him physically fight the woman while Smith video recorded it. (*Id.*, ¶ 36.) He also recorded the woman apologizing for "'being disloyal to 'the family.'" (*Id.*) He heated a metal spoon on the stove, pressed it to the woman's eye, and threatened to use it on her face. (*Id.*) The woman temporarily lost vision in her eye and continues to experience irritation from the burn. (*Id.*)

Smith held a knife to another woman's throat, and another time pressed a pillow over her mouth while holding a screwdriver to her face and threatened to gauge out her eye, only to be

2

interrupted by the landlord.  (PageID.132, ¶ 26; PageID.130, ¶ 18.)  Smith slapped that same woman once for spending 20 dollars on food while traveling from one hotel to another in Chicago.  (PageID.132, ¶ 26.)  He beat up a minor who worked for him when she tried to leave with one of the cell phones he gave her, which contained a lot of customer information on it that was valuable to Smith's "New Stars" operation.  (PageID.137, ¶¶ 50-51; PageID.139, ¶ 61.)  The minor ended up in the hospital after that altercation with Smith with "a bruise on her right eye, a one-half inch laceration on the brow of her nose, and symmetrical bruising under her chin and on both sides of her neck that were consistent with strangulation marks," as well as "two-inch symmetrical bruises just below both of her knees" and "a concussion because she was also hit in the back of the head."  (PageID.137, ¶ 51.)

Smith used some of the women who worked for him to do his bidding.  One of the women stated that Smith once stood behind her and instructed her to beat another prostitute after she talked back to Smith.  (PageID.136, ¶ 46.)  And after discovering another woman was using Smith's photographs online for her own prostitution advertisements, Smith ordered a group of women who worked for him to go find her at a Lansing hotel and beat her.  (PageID.132, ¶ 29; PageID.136, ¶ 47.)  The women complied and broke the other woman's nose during the attack.  (*Id.*)

Smith does not contest the above statements or reports by witnesses.  (PageID.130-139.)  The above statements, among others, were corroborated by multiple witnesses, cell phone records, online advertisements, photographs, arrest records, and hospital records.  The statements that Smith disputes as true from various witnesses have been omitted in the above summary.

3

**SENTENCING GUIDELINES**

The sentencing guidelines call for a life sentence.  (PageID.160.)  Two of the offenses to which Smith pled guilty, under 18 U.S.C. § 1591, allow a life sentence.  (*Id.*)  If the Court accepts the binding plea agreement, the agreement would cap Smith's potential sentence at 25 years.  (PageID.51, ¶ 4.)  This sentencing cap is the result of a negotiated resolution that avoids the victims' having to testify and recognizes the sentences of 30 and 40 years from recent sex trafficking cases in this District where the defendants went to trial.  (*United States v. Jackson*, 1:13-CR-246-RHB (sentenced after trial to 30 years for sex trafficking three minors in Grand Rapids from June to August 2012); *United States v. Bryant*, 1:14-CR-158-PLM (sentenced after trial to 40 years for sex trafficking one adult and three minors in Lansing and Arizona between August 2012 and July 2014).)  Like Smith, both Jackson and Bryant also had significant criminal histories and were violent and threatening to their victims – Bryant more so than Jackson.  The proposed 25-year sentencing cap in Smith's plea agreement takes into account Smith's age (46) at the time of sentencing, as compared with Jackson's (31) and Bryant's (25), as a factor to be considered in determining the length of sentence required for specific deterrence.  And finally, the sentencing cap reflects the parties' understanding that in a case that calls for a guideline sentence of life and where the charges permit a life sentence, there is limited incentive to plead guilty without the assurances of a sentencing cap that takes a life sentence off the table.  While a life sentence may be warranted given the depravity and relentlessness of Smith's conduct, the assurances of a 25-year sentencing cap could still accomplish the sentencing factors under 18 U.S.C. § 3553(a) by protecting the community, specifically deterring Smith, deterring others, and still imposing a sentence sufficiently lengthy to reflect the seriousness of the offense.  A 25-year sentence will incarcerate Smith until age 71, and although he could still engage in criminal

activity after that age, his ability to exert force, violence, and coercion over young women will likely be significantly reduced, and therefore his danger to others mitigated.

The only disputed guideline enhancement is the two-level enhancement for a vulnerable victim under U.S.S.G. § 3A1.1(b)(1). (PageID.142, ¶ 86; PageID.158.) The PSR writer's response accurately and succinctly addresses why the victim in question was unusually vulnerable, not only due to her status as a runaway and her previous experience with drugs and commercial sex, but also because of the heinous sexual abuse she experienced at an early age. (PageID.158-59.) That early childhood sexual abuse caused the victim to be unusually vulnerable to manipulation, control, and violence, especially in an environment involving sex, such as the one she found herself in with Smith. *See United States v. Willoughby*, 742 F.3d 229, 241 (6th Cir. 2014) ("[T]he court noted that [the victim] was especially vulnerable for reasons other than her age – including that she was a homeless runaway with a history of abuse and neglect," and the § 3A1.1(b)(1) applied.) The defendant's objection cites only cases in other circuits. The binding Sixth Circuit decision in *Willougbhy* affirms the enhancement where the victim was not only young but also "a homeless runaway with a history of abuse and neglect." *Id.* The Sixth Circuit recognized that the enhancement for these types of vulnerabilities were not accounted for elsewhere in the guidelines. Like the *Willoughby* court, this Court should apply the enhancement under § 3A1.1(b)(1) because the victim was unusually vulnerable due to her status as a runaway, her drug addiction, and the severe emotional and sexual abuse she suffered as a child. Whatever the Court's position, the application of the enhancement does not affect the guidelines, as the total offense level remains 43 whether the enhancement is scored or not. (PageID.159.)

**RESTITUTION**

Smith agreed in his plea agreement to pay full restitution under 18 U.S.C. § 1593 to any victims of his sex trafficking or transportation for purposes of prostitution, including but not limited to those whose initials appear in the indictment. (PageID.51, ¶ 5.) In this case, one of the sex trafficking victims – E.L. – is requesting restitution, and Smith pled guilty to the count that involved her. E.L. requests $20,000 in current and future counseling costs, based on the following:



Future Medical/Counseling Expenses: List expenses that your doctor or therapist anticipates in the future. Please attach an estimate of the costs of these services.

MY CURRENT THERAPIST IS RECCOMENDING LONG-TERM POST-TRAUMATIC STRESS DISORDER COUNSELING, ESTIMATED COST OF THERAPY ~ 200.00/hour

Total $ ~ 20,000

E.L. substantiates the need for long-term post-traumatic stress disorder counseling in her detailed victim impact statement. (PageID.139, ¶ 63.) Smith does not contest the statements in the victim impact statement or the request for restitution. (*See* PSR objections and Defendant's Sentencing Memorandum.)

Restitution is mandatory in a sex trafficking case when a victim comes forward with information that he or she will endure certain costs related to the offense, such as counseling costs. Under 18 U.S.C. § 1593, titled "Mandatory Restitution," "the court shall order restitution for any offense under this chapter," which includes the sex trafficking conviction under § 1591 involving E.L. 18 U.S.C. § 1593(a). The order "shall direct the defendant to pay the victim . . . the full amount of the victim's losses . . . ." 18 U.S.C. § 1593(b)(1). The term "'full amount of the victim's losses' has the same meaning as provided in section 2259(b)(3) . . . ." 18 U.S.C. § 1593(b)(3).

Referring to § 2259(b)(3) as directed, the definition of the "full amount of the victim's losses" includes any costs incurred by the victim for, among other things, medical services, lost income, attorney's fees and "other costs incurred," and "any other losses suffered by the victim as a proximate result of the offense." 18 U.S.C. § 2259(b)(3). These costs include the future costs of treatment and therapy. *See, e.g.*, *United States v. Gamble*, 709 F.3d 541, 545 (6th Cir. 2013) ("ascertainable future losses are included within the concept of 'full amount of the victim's losses'"); *United States v. Danser*, 270 F.3d 451, 455 (7th Cir. 2001) (joining other circuits in holding that victims may be compensated for the anticipated future costs of psychological treatment under 18 U.S.C. § 2259). In ordering restitution for counseling and other future losses, "[t]his cannot be a precise mathematical inquiry and involves the use of discretion and sound judgment." *United States v. Paroline*, 134 S. Ct. 1719, 1728 (2014).

The "court shall order restitution . . . without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f). Additionally, in "no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source be considered in determining the amount of restitution." 18 U.S.C. § 3664(f).

Section 1593, the applicable mandatory restitution statute for sex trafficking cases, directs courts to apply 18 U.S.C. § 3664, among other restitution statutes, for the mechanics of the restitution order. Section 3664 provides that issues related to restitution "shall be resolved by the court by the preponderance of the evidence," and "[t]he burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government." 18 U.S.C. § 3664(e). "No victim shall be required to participate in any phase of a restitution order." 18 U.S.C. § 3664(g)(1). The government presented E.L.'s request for

7

restitution, which is based on a reasonable estimate from her current therapist that she will need approximately 100 hours of therapy, totaling $20,000.  Multiple witnesses reported that of all the women who worked for Smith, Smith was the most violent with E.L.  (PageID.132, ¶¶ 26-27; PageID.134, ¶ 38.)  Smith does not contest that he physically abused E.L., including by threatening to gauge out her eye with a screwdriver, and other assaults, and that he supplied her with heroin on a daily basis.  Preponderant evidence exists that E.L. is entitled to restitution and that $20,000 is a reasonable request based on her therapist's estimate of future counseling needs.

## CONCLUSION

For the reasons above, the government respectfully requests that the Court issue a sentence of 25 years and a restitution order to E.L. in the amount of $20,000.

Respectfully submitted,

PATRICK A. MILES, JR.
United States Attorney

Dated: May 5, 2016
*/s/ Tessa K. Hessmiller*
TESSA K. HESSMILLER
Assistant United States Attorney
P.O. Box 208
Grand Rapids, Michigan 49501-0208
(616) 456-2404